Larry Hutcher
Joshua Krakowsky
DAVIDOFF HUTCHER & CITRON LLP
605 Third Avenue
New York, New York 10158
(212) 557-7200

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

| | | |
|---|---|---|
| TRANSNATIONAL MANAGEMENT SYSTEMS, LLC, TRANSNATIONAL MANAGEMENT SYSTEMS II, LLC, and ADAM VICTOR, | : : : : | 14 Civ. 2151 (AT) |
| Plaintiffs, | : : | **DECLARATION OF ADAM VICTOR** |
| - against - | : : | |
| ANTHONY CARCIONE and BIZ JET CONSULTANTS, LLC, | : : | |
| Defendants. | : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

ADAM VICTOR, states under the penalties of perjury, pursuant to 28 U.S.C. § 1746, as true and correct, the following:

1. I am the individually named plaintiff and owner of the two corporate plaintiffs (collectively, the "Plaintiffs") in the above-captioned action, and as such, I am fully familiar with the facts and circumstances of this action. I submit this declaration based upon personal knowledge, except where otherwise indicated, and in support of Plaintiffs' motion seeking leave to serve and file an amended complaint in this action.

2. In late 2009, I entered into an agreement with defendants Anthony Carcione ("Carcione") and his company Biz Jet Consultants, LLC ("Biz Jet Consultants") (Carcione and Biz Jet Consultants, collectively, the "Defendants") whereby Defendants would negotiate the purchase a certain Gulfstream IV private jet known as the "771 Plane" on my behalf so that I

could use the 771 Plane as part of an air charter business, which would be operated by Tim Prero ("Prero").

3.      Defendants are airplane brokers and acted as my brokers in purchasing the 771 Plane, as well as a second Gulfstream IV private jet known as the "772 Plane".

4.      Defendants agreed to coordinate all inspections and regulatory approvals with respect to the 771 Plane in exchange for a fixed $50,000 "Transaction Management Fee."

5.      Defendants coordinated due diligence on the 771 Plane, and negotiated the purchase price for the 771 Plane on my behalf.

6.      When the time came to actually purchase the 771 Plane, Defendants lied to me, stating that I was being charged the same price that Defendants obtained the 771 Plane, when in reality; Defendants did a back-to-back transaction whereby they purchased the 771 Plane for $7.35 million, and immediately sold it to me for $1.1 million more, or $8.45 million.

7.      Less than one year later, in 2010, Defendants effectuated the same swindle on me with respect to the 772 Plane.

8.      I entered into a verbal agreement with Defendants whereby Defendants would negotiate the purchase of the 772 Plane and coordinate all inspections and regulatory approvals in exchange for $40,000.

9.      Defendants coordinated due diligence on the 772 Plane, and negotiated the purchase price for the 772 Plane on my behalf.

10.     When the time came to actually purchase the 772 Plane, Defendants again lied to me, stating that I was being charged the same price that Defendants obtained the 772 Plane, when in reality; Defendants did a back-to-back transaction whereby they purchased the 771 Plane for $6.15 million, and immediately sold it to me for $1.8 million more, or $7.95 million.

11. I understand that my attorneys recently took Carcione's deposition in Boise, Idaho on October 28, 2014. At that deposition, I understand that Carcione admitted he had a secret agreement with Prero whereby Carcione would split with Prero any ill-gotten gains Defendants earned on the transactions they entered with me.

12. Prior to Carcione's testimony, I had no knowledge that Prero, or his company Pegasus Elite Aviation, Inc. ("Pegasus") had any role in purchasing either the 771 Plane or the 772 Plane (the 771 Plane and the 772 Plane, collectively, the "Planes.")

13. Instead, Prero owned an air charter company and encouraged me to purchase the Planes so that Prero/Pegasus could use the Planes in their air charter business.

14. I had no understanding that Prero/Pegasus had a secret verbal agreement with Carcione where Carcione would split any money he was able to swindle out of me with Prero/Pegasus until Carcione admitted such at his deposition when confronted by records subpoenaed from an escrow account he controlled.

I declare under penalty of perjury that the foregoing is true and correct.


Dated: New York, New York
       December 23, 2014

/s/ Adam Victor
ADAM VICTOR