DAVIDOFF HUTCHER & CITRON LLP
605 Third Avenue, 34th Floor
New York, New York 10158
Telephone: (212) 557-7200
Facsimile: (212) 286-1884
Larry Hutcher
E-mail: lkh@hdhclegal.com
Joshua Krakowsky
E-mail: jsk@dhclegal.com
*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | |
|---|---|
| TRANSNATIONAL MANAGEMENT SYSTEMS II, LLC, | 14 Civ. 2151 (AT) (HBP) |
| Plaintiff, | **THIRD AMENDED COMPLAINT** |
| - against - | |
| ANTHONY CARCIONE, BIZ JET CONSULTANTS, LLC, TIM PRERO, and PEGASUS ELITE AVIATION, INC., | |
| Defendants. | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Plaintiff Transnational Management Systems II, LLC ("TMS II" or "Plaintiff"), by and through its attorneys, Davidoff Hutcher & Citron LLP, by way of a Third Amended Complaint against defendants Anthony Carcione ("Carcione"), Biz Jet Consultants, LLC ("Biz Jet Consultants") (Carcione and Biz Jet Consultants, collectively, the "Carcione Defendants"), Tim Prero ("Prero") and Pegasus Elite Aviation, Inc. ("Pegasus") (Prero and Pegasus, collectively the "Prero Defendants") (the Carcione Defendants and Prero Defendants, collectively, the "Defendants"), allege and state as follows:

## NATURE OF THE ACTION

1.     This is an action for compensatory and punitive damages stemming from Defendants' shocking and egregious fraud, theft and breaches of fiduciary duties owed to Plaintiff.

2.     Plaintiff purchased and currently operates two Gulfstream IV private jets (the "Planes"). Defendant Carcione and his company, Biz Jet Consultants, were Plaintiff's agents with respect to purchasing and operating the Planes.

3.     Defendants abused the trust placed in them by stealing from Plaintiff.

4.     Carcione, through various companies controlled by him, purchased the two Planes on Plaintiff's behalf, and falsely charged Plaintiff for millions more than what the Planes were actually purchased for, pocketing the difference. Carcione testified that he had a secret oral agreement with the Prero Defendants whereby the Carcione Defendants would split the ill-gotten gains with the Prero Defendants.

5.     Carcione and Biz Jet Consultants' escrow account records, which were obtained through a subpoena in this action, demonstrate the amounts stolen by the Defendants.

6.     The Prero Defendants provided substantial assistance to the Carcione Defendants in purchasing the Planes. Prior to purchasing each of the Planes, Prero misrepresented to Plaintiff that the price for the Planes was the lowest price possible, and encouraged Plaintiff to purchase the Planes. Those were lies and Prero knew they were lies.

7.     The Prero Defendants lied to Plaintiff since The Prero Defendants would operate the Planes once they were purchased, and were secretly receiving from the Carcione Defendants a portion of the amount stolen from Plaintiff.

2

8.      Through this action, Plaintiff seeks to recover the amounts stolen from it by Defendants, in addition to interest and punitive damages for Defendants' malicious conduct.

## THE PARTIES

9.      Plaintiff TMS II is a Delaware limited liability company with its principal place of business in New York whose business is owning and operating a certain Gulfstream IV private jet with the tail number N772AV.

10.     Defendant Carcione is an individual who resides in Boise, Idaho.

11.     Defendant Biz Jet Consultants is an Idaho limited liability company with its principal place of business in Idaho, whose sole member is defendant Carcione. Biz Jet Consultants purports to provide brokerage services for purchasing and maintaining private aircrafts like the Planes at issue herein.

12.     Defendant Prero is an individual who resides in California.

13.     Upon information and belief, defendant Pegasus is a Nevada corporation whose principal place of business is in Van Nuys, California.

## JURISDICTION AND VENUE

14.     This Court has personal jurisdiction over Defendants since Defendants committed tortious actions which had an effect in the State of New York.

15.     This Court has subject matter jurisdiction over this action because there exists diversity of citizenship pursuant to 28 U.S.C. § 1332(a)(1) and the amount in controversy exceeds this Court's jurisdictional limit.

16.     This Court is the appropriate venue for this action since a substantial part of the events or omissions giving rise to the claim occurred in this district pursuant to 28 U.S.C.

3

§ 1391(b)(2). A substantial number of meetings took place in this district and all of the damages caused by Defendants' actions occurred in New York.

17.     This Court is also the appropriate venue for this action since this Court ruled that a forum selection clause identifying the Southern District of New York as the forum to litigate any disputes is controlling for any claims related to the agreement such clause is contained in.

## FACTUAL ALLEGATIONS

### The First Theft

18.     In late 2009, Adam Victor, through his company non-party TransNational Management Systems, LLC ("TMS"), sought to purchase a used Gulfstream IV jet both for personal use, and to start an air charter business.

19.     An associate of Victor's identified a certain 1992 Gulfstream IV aircraft, with FAA Registration Number N771AV (formerly N4753), Serial Number 1197 (the "771 Plane") that Victor wanted to purchase.

20.     At that time, Prero operated an aircraft charter business. Victor chartered aircraft through Prero's prior company and the two became business acquaintances.

21.     Victor informed Prero of his interest in purchasing the 771 Plane and entering into an agreement with Prero where Prero could use the 771 Plane as part of his aircraft charter business.

22.     Prero responded that Victor should absolutely purchase the 771 Plane and allow Prero to operate it as part of his aircraft charter business.

23.     Prero directed Victor to connect with Prero's contact, Carcione. Prero represented to Victor that Carcione was an aircraft broker who would act on Victor's behalf to buy and finance the purchase of the 771 Plane.

4

24.    Victor then entered into a verbal agreement with Carcione and Carcione's company, Biz Jet Consultants, whereby the Carcione Defendants would negotiate the purchasing and financing of the 771 Plane and coordinate all inspections and regulatory approvals in exchange for a fixed fee of $50,000, characterized as a "Transaction Management Fee".

25.    Victor and TMS provided Carcione and Biz Jet Consultants with $9.7 million to be held in Carcione and Biz Jet Consultants' escrow account to purchase the 771 Plane.

26.    Defendants (including Prero and Pegasus) performed due diligence on the 771 Plane on behalf of Victor and TMS.

27.    Carcione and Biz Jet Consultants reported back that after negotiating with the seller of the 771 Plane, the best possible price to purchase the 771 Plane was $8.45 million.

28.    The Prero Defendants represented to Victor that the price of $8.45 million was the lowest price possible for the make and model of the 771 Plane and encouraged Victor to purchase the 771 Plane at that price.

29.    The Carcione Defendants billed Victor and TMS $8.45 million to purchase the 771 Plane and an additional $190,259 to cover the Carcione Defendants' $50,000 fixed fee, inspection fees, and other transaction costs. In total, the Carcione Defendants charged Victor and TMS $8,640,259.

30.    On or about January 14, 2010, the Carcione Defendants took $8,640,259 from their escrow account purportedly for purchasing the 771 Plane and refunded to Victor and TMS the balance of $1,059,741 that was in Carcione's and Biz Jet Consultants' escrow account.

31.    The Carcione Defendants did not purchase the 771 Plane for $8.45 million as represented, but instead purchased the 771 Plane from Takahumi Forie for $7.35 million in a "back-to-back transaction" whereby the Carcione Defendants purchased the 771 Plane for $7.35

5

million and then purportedly sold it simultaneously to Victor and TMS for $8.45 million plus a number of fees charged to Victor and TMS. The word "purportedly" is used because Biz Jet Consultants did not yet own the 771 Plane when it agreed to sell the 771 Plane to Victor and TMS.

32.     Defendants then lied to Victor and TMS, representing that the 771 Plane cost approximately $1.1 million more than it actually cost.

33.     The Carcione Defendants then stole the difference from their escrow account, refunding Victor and TMS approximately $1.1 million less than the Carcione Defendants should have. The only amount that the Carcione Defendants were authorized to remove from the escrow account to pay themselves was the $50,000 fixed fee.

34.     Of the approximately $1.1 million in illicit gains, the Carcione Defendants paid the Prero Defendants half of that amount for the Prero Defendants' substantial assistance in perpetrating this fraud.

35.     The Prero Defendants assisted in the pre-purchase due diligence process on the 771 Plane, and represented to Victor that the $8.45 million price was the best price possible. The Prero Defendants took these actions knowing that Pegasus was going to operate the 771 Plane once Victor purchased it, and knowing that the Prero Defendants were going to share in the ill-gotten gains earned on the purchase and sale of the 771 Plane.

36.     Moreover, the Carcione Defendants provided to Victor an aircraft purchase agreement (the "First Purported Agreement"), dated as of October 6, 2009, purportedly governing the sale of Plane 771 from Biz Jet Consultants to TMS.

6

37.     The First Purported Agreement falsely represented that Biz Jet Consultants is the seller of Plane 771 and TMS is the buyer, even though Biz Jet Consultants was Victor and TMS's agent, and not the seller.

38.     The First Purported Agreement also falsely represented that Biz Jet Consultants had "all requisite power and authority to enter into the transaction," which was false at the time that representation was made. At the time that representation was made, Biz Jet Consultants did not yet own the 771 Plane as it had not yet purchased it from Mr. Horie, making the misrepresentation knowingly false.

39.     The First Purported Agreement also falsely represented that Biz Jet Consultants had "No conflict" in entering into the First Purported Agreement, which, given the circumstances, was knowingly false.

40.     To the extent the First Purported Agreement was fully executed, it was fraudulently induced by the Carcione Defendants' specific misrepresentations that (i) they were acting as the agent for Victor and TMS, and not as a seller whose interests were not aligned with Victor and TMS; (ii) that they were being compensated a total of $50,000 for their work in negotiating the purchase of Plane 771; (iii) that Biz Jet Consultants had the authority to sell the 771 Plane at the time it entered the First Purported Agreement; and (iv) that Biz Jet Consultants had no conflict in entering into the First Purported Agreement.

41.     Carcione and Biz Jet Consultants cannot explain why they extracted $50,000 from Victor and TMS as a "Transaction Management Fee" when Biz Jet Consultants also acted as the seller of the 771 Plane.

42.     Nor can Carcione and Biz Jet Consultants explain why they controlled the buyer's escrow account and distributed funds to themselves as seller, as well as to themselves as broker, as well as to the Prero Defendants and others.

43.     Nor can Carcione and Biz Jet Consultants explain how they could act as both the seller of the 771 Plane, but also arrange in and participate in the due diligence on behalf of Victor and TMS in purchasing the 771 Plane.

44.     Given this Court's decision in finding that the forum selection clause in the First Purported Agreement identifying Virginia as the exclusive forum for any disputes relating to the 771 Plane, this recitation of facts about the 771 Plane is only included for background. This Court directed the parties to litigate the issues surrounding the 771 Plane in Virginia.

**The Second Theft**

45.     In June 2010, Carcione, on behalf of himself individually and also as a representative of his company, Biz Jet Consultants, informed Adam Victor about a similar plane, a certain 1987 Gulfstream IV aircraft, with FAA Registration Number N772AV (formerly N450BF), Serial Number 1015 (the "772 Plane"), that was for sale. Victor expressed interest in purchasing the 772 Plane in order to expand his private charter air business, and again utilized the Carcione Defendants to negotiate the closing of that transaction.

46.     Plaintiff used the Carcione Defendants as its agent at the recommendation and urging of the Prero Defendants.

47.     Since Victor was a repeat customer, the Carcione Defendants offered to give Plaintiff a discount, and only charge it a fixed fee of $40,000 rather than $50,000 for negotiating the purchase of the 772 Plane on Plaintiff's behalf.

8

48.     Plaintiff provided the Carcione Defendants with a $200,000 deposit to be held in Carcione's and Biz Jet Consultants' escrow account to purchase the 772 Plane.

49.     Defendants (including the Prero Defendants) performed pre-purchase due diligence on the 772 Plane on behalf of Plaintiff.

50.     Carcione and Biz Jet Consultants reported back that after negotiations, the purchase price for the 772 Plane was $7.95 million.

51.     Defendants (including Prero and Pegasus) represented that the price of $7.95 million for the 772 Plane was at the bottom of the market, so that even under the worst case scenario, Plaintiff would be able to at least recover the purchase price. These representations were false.

52.     Carcione and Biz Jet Consultants then requested that Plaintiff wire an additional $7,979,135 to Carcione and Biz Jet Consultants, in addition to the $200,000 already held in Carcione's and Biz Jet Consultants' escrow account, in order to purchase the 772 Plane and cover Carcione's and Biz Jet Consultants' $40,000 fixed fee, inspection fees, insurance, and other transaction costs. Carcione and Biz Jet Consultants told Victor, orally and via email, that the bank then holding the plane was getting anxious and wanted to close immediately.

53.     On or about September 17, 2010, Plaintiff wired to Carcione's and Biz Jet Consultants' escrow account an additional $7,979,135 as instructed, totaling $8,179,135 paid for the 772 Plane.

54.     Carcione and Biz Jet Consultants did not purchase the 772 Plane for $7.95 million as represented.

55.     Instead, Carcione arranged for an acquaintance named Mark Renberg to be the manager of a single purpose entity named Supermall, LLC that Carcione wholly-owned. Carcione conducted negotiations to purchase the 772 Plane through Renberg.

56.     Supermall, LLC purchased the 772 Plane from Wells Fargo Equipment Finance, Inc. for $6.15 million. Supermall, LLC then sold the 772 Plane to Biz Jet Consultants in a "simultaneous transaction" for $7.95 million, representing an immediate profit of $1.8 million for Supermall, LLC.

57.     Biz Jet Consultants then purportedly sold the 772 Plane to Plaintiff for $7.95 million.

58.     Carcione and Prero both lied to Plaintiff, representing that the 772 Plane cost $1.8 million more than it actually cost.

59.     Carcione and Biz Jet Consultants then stole the difference from their escrow account. The only amount that Carcione and Biz Jet Consultants were authorized to remove from the escrow account to pay themselves was the $40,000 fixed fee.

60.     Of the approximately $1.8 million in illicit gains, Carcione and Biz Jet Consultants paid Renberg at least $50,000 for his services, and shared the balance of the profits earned with Prero and/or Pegasus for Prero and Pegasus's substantial assistance in perpetrating this fraud.

61.     Mark Renberg filed for personal bankruptcy a few days after he received $50,000 from Carcione and Biz Jet Consultants.

62.     Upon information and belief, Renberg did not disclose any payments received from Carcione and Biz Jet Consultants to the bankruptcy court or trustee.

541417v.1

63.     Prero and Pegasus assisted in the pre-purchase due diligence process on the 772 Plane.

64.     On or about July 2010, Prero, acting on his own behalf and on behalf of his company Pegasus, represented to Plaintiff that $7.95 million price was the best price possible for purchasing the 772 Plane. On or about July 2010, Prero represented to Plaintiff that if it did not purchase the 772 Plane for $7.95 million, Plaintiff would end up paying more for a lower quality aircraft.

65.     Prero knew that these representations were false since he knew that Carcione and Biz Jet Consultants were doing a simultaneous transaction whereby they would purchase the 772 Plans for $6.15 million and immediately sell it to Plaintiff for $1.8 million more.

66.     Prero made the aforementioned representations both on behalf of himself individually, and on behalf of his company, Pegasus, since Prero knew that Pegasus would operate the 772 Plane as part of Pegasus's charter flight business once Plaintiff purchased it.

67.     Furthermore, Prero and Pegasus agreed with Carcione and Biz Jet Consultants that Prero and Pegasus would receive a secret kickback from Carcione and Biz Jet Consultants where they would share in the ill-gotten $1.8 million earned on the purchase and sale of the 772 Plane.

68.     Prero and Pegasus had specific knowledge that Carcione and Biz Jet Consultants were purporting to act as Plaintiff's agent in the purchase of the 772 Plane. Prero and Pegasus referred Carcione and Biz Jet Consultants to Plaintiff, representing to Plaintiff that Carcione and Biz Jet Consultants were airplane brokers who would act on Plaintiff's behalf.

69.     Prero and Pegasus also arranged for due diligence to be performed on Plaintiff's behalf and reported to Plaintiff that the 772 Plane was in excellent condition.

11

541417v.1

70.     After stealing the money from their escrow account, Carcione and Biz Jet Consultants assisted Victor in setting up the corporate entity, Plaintiff TMS II, and transferring ownership of the 772 Plane to Plaintiff TMS II.

71.     Moreover, Carcione and Biz Jet Consultants provided to Plaintiff an aircraft purchase agreement (the "Second Purported Agreement"), dated as of September 3, 2010, purportedly governing the sale of Plane 772 from Biz Jet Consultants to Plaintiff.

72.     The Second Purported Agreement falsely represented that Biz Jet Consultants is the seller of Plane 772 and TMS II is the buyer, even though Biz Jet Consultants was Plaintiff's agent, and not the seller.

73.     The Second Purported Agreement also falsely represented that Biz Jet Consultants was authorized to sell the 772 Plane. At the time that representation was made, Biz Jet Consultants had not yet purchased the 772 Plane, making the misrepresentation knowingly false.

74.     The Second Purported Agreement also falsely represented that Biz Jet Consultants did not have any conflict in entering into the Second Purported Agreement, which given the circumstances, was knowingly false.

75.     To the extent the Second Purported Agreement was fully executed, it was fraudulently induced by Carcione and Biz Jet Consultants' specific misrepresentations that (i) they were acting as Plaintiff's agent, and not as a seller whose interests were not aligned with Plaintiff; (ii) that they were being compensated a total of the $40,000 fixed fee for their work in negotiating the purchase of Plane 772; (iii) their misrepresentation that the price of the 772 Plane was at the bottom of the market, which is belied by Carcione and Biz Jet Consultants pocketing approximately $1.8 million on the sale; (iv) that Biz Jet Consultants had the authority to sell the

12

772 Plane at the time it entered the Second Purported Agreement; and (v) that Biz Jet Consultants had no conflict in entering into the Second Purported Agreement.

76.     Carcione and Biz Jet Consultants cannot explain why they extracted a fixed fee of $40,000 from Plaintiff to negotiate the purchase of the 772 Plane when Biz Jet Consultants also acted as the seller of the 772 Plane.

77.     Nor can Carcione and Biz Jet Consultants explain why they controlled the buyer's escrow account and distributed funds to themselves as seller, as well as to themselves as broker, and possibly others.

78.     Nor can Carcione and Biz Jet Consultants explain how they could act as both the seller of the 772 Plane, but also arrange in and participate in the due diligence on behalf of Plaintiff in purchasing the 772 Plane.

79.     Also, upon information and belief, with respect to both the first theft and the second theft, Biz Jet Consultants is not a business licensed to sell airplanes pursuant to 31 U.S.C. § 5312(a)(2)(T). As such, Biz Jet Consultants is not permitted to sell airplanes, but may only act as a broker. Indeed, Biz Jet Consultants represented to Plaintiff that it was acting as Plaintiff's broker, and not as seller of the Planes.

**The Third Theft**

80.     In October 2011, the 771 Plane required an engine rebuild as part of its ordinary maintenance. Carcione and Biz Jet Consultants recommended that they negotiate the price with Biz Jet International (confusingly similar to Defendant Biz Jet Consultants), a subsidiary of Lufthansa Technik AG of Germany who would provide the labor and parts for the engine rebuild.

13

81.     Carcione and Biz Jet Consultants represented to TMS that the engine rebuild would cost approximately $1.7 million, and TMS paid that amount to Carcione and Biz Jet Consultants.

82.     Upon information and belief, the engine rebuild for the 771 Plane was approximately $1.58 million, with Carcione and Biz Jet Consultants stealing the difference of approximately $112,000 between the stated price and the actual price.

## AS AND FOR A FIRST CAUSE OF ACTION
## (BREACH OF FIDUCIARY DUTY AGAINST CARCIONE AND BIZ JET CONSULTANTS)

83.     Plaintiff repeats and realleges each and every allegation contained in the preceding paragraphs as if set forth in full herein.

84.     Carcione and Biz Jet Consultants acted as the agent for Plaintiff with respect to negotiating the purchase of the 772 Plane, and with respect to the engine rebuild for the 771 Plane.

85.     As such, Carcione and Biz Jet Consultants were at all relevant times, obligated to act in Plaintiff's best interests and not to lie to Plaintiff about pricing so that Carcione and Biz Jet Consultants could steal the difference between the actual price and Carcione's and Biz Jet Consultants' fictional price.

86.     Carcione and Biz Jet Consultants were obligated to act in good faith and deal fairly with Plaintiff.

87.     Carcione and Biz Jet Consultants breached their fiduciary duties to Plaintiff by placing Carcione's and Biz Jet Consultants' interests ahead of Plaintiff's to Plaintiff's detriment, including, but not limited to: (a) lying to Plaintiff about the price for the 772 Plane; (b) lying to TMS and Victor about the price of the engine rebuild for the 771 Plane; and (c) lying to Plaintiff

14

that Carcione and Biz Jet Consultants were acting as Plaintiff's agents, when in reality, Carcione's and Biz Jet Consultants' interests were adverse to Plaintiff.

88.     Carcione and Biz Jet Consultants took these actions intentionally and with malicious disregard for their fiduciary duties owed to Plaintiff as Plaintiff's agent.

89.     As a direct and proximate result of Carcione's and Biz Jet Consultants' breaches of their fiduciary duties, Plaintiff suffered substantial financial loss.

90.     By virtue of the foregoing, Plaintiff has been damaged by Carcione's and Biz Jet Consultants' breaches of fiduciary duties in an amount to be determined at trial, but not less than $1,912,000 ($1.8 million for the 772 Plane and $118,000 for the engine rebuild for the 771 Plane), in addition to interest accrued and accruing.

91.     Plaintiff is also entitled to punitive damages against Carcione and Biz Jet Consultants for their tortious and malicious breach of fiduciary duties in an amount to be determined at trial, but not less than $1.5 million.

## AS AND FOR A SECOND CAUSE OF ACTION
## (BREACH OF CONTRACT AGAINST CARCIONE AND BIZ JET CONSULTANTS)

92.     Plaintiff repeats and realleges each and every allegation contained in each of the foregoing paragraphs hereof as if set forth in full herein.

93.     Plaintiff agreed to pay Carcione and Biz Jet Consultants a fixed fee of $40,000 to negotiate the closing of the 772 Plane. Such agreement is a valid and enforceable contract.

94.     Carcione and Biz Jet Consultants breached that agreement by taking well in excess of the fixed $40,000 fee, instead taking over $1.8 million for Carcione's and Biz Jet Consultants' services in negotiating the closing of the 772 Plane.

15

95.     As a direct and proximate result of this breach of contract, Plaintiff has suffered damages in an amount to be determined at trial, but in no event less than $1.8 million in addition to interest accrued and accruing.

## AS AND FOR A THIRD CAUSE OF ACTION
## (FRAUD AGAINST CARCIONE AND BIZ JET CONSULTANTS)

96.     Plaintiff repeats and realleges each and every allegation contained in each of the foregoing paragraphs hereof as if set forth in full herein.

97.     Carcione and Biz Jet Consultants agreed to act on behalf of Plaintiff in closing the transactions whereby Plaintiff would purchase the 772 Plane, and also agreed to act on TMS's and Victor's behalf in negotiating the engine rebuild for the 771 Plane.

98.     In order to induce Plaintiff to allow Carcione and Biz Jet Consultants to act as their agents, Carcione and Biz Jet Consultants made the representations that they would only charge a fixed fee of $40,000 in closing fees for the 772 Plane.

99.     The representations made by Carcione and Biz Jet Consultants were material to Plaintiff's decisions to permit Carcione and Biz Jet Consultants to act as Plaintiff's agent with respect to the purchase of the 772 Plane, and the engine rebuild for the 771 Plane.

100.    Carcione and Biz Jet Consultants made the representations with the intent that Plaintiff would rely upon them in permitting Plaintiff to act as their agents.

101.    Carcione's and Biz Jet Consultants' representations were false, as described herein.

102.    Carcione and Biz Jet Consultants were aware of the falsity of their representations at the time that the representations were made.

103.    Plaintiff actually relied on Carcione's and Biz Jet Consultants' representations

16

when Plaintiff permitted Carcione and Biz Jet Consultants to act as their agent.

104.    Plaintiff's reliance on Carcione's and Biz Jet Consultants' representations was reasonable in that Plaintiff had no knowledge of the falsity of the representations and had no reason to know that the representations were false.

105.    Carcione's and Biz Jet Consultants' actions in making the above misrepresentations to Plaintiff as an inducement to be appointed as an agent with respect to the identified transactions was malicious, oppressive and fraudulent.

106.    By reason of Carcione's and Biz Jet Consultants' fraudulent representations, Plaintiff has been damaged in an amount to be determined at trial, but in any event, not less than $1,912,000.

107.    Plaintiff is also entitled to punitive damages against Carcione and Biz Jet Consultants for their tortious and malicious fraud in an amount to be determined at trial, but not less than $1.5 million.

## AS AND FOR A FOURTH CAUSE OF ACTION
### (FRAUDULENT INDUCEMENT AGAINST CARCIONE AND BIZ JET CONSULTANTS)

108.    Plaintiff repeats and realleges each and every allegation contained in each of the foregoing paragraphs hereof as if set forth in full herein.

109.    Carcione and Biz Jet Consultants' representations that (i) they were acting as the Plaintiff's agent, and not as a seller whose interests were not aligned with Plaintiff; (ii) that they were being compensated a total of $40,000 for their work in negotiating the purchase of the 772 Plane; and (iii) their misrepresentation that the price of the 772 Plane was at the bottom of the market, were all material representations.

17

110.    When Carcione and Biz Jet Consultants made the aforementioned misrepresentations to Plaintiff in July, August and September 2010 (with respect to Plane 772), they were false. Carcione and Biz Jet Consultants knew those representations were false when made, since Carcione and Biz Jet Consultants: (i) were acting as the seller of Plane 772 and not as Plaintiff's agent; (ii) they were being compensated significantly more than $40,000; and (iii) the price charged to TMS II for Plane 772 was not at the bottom of the market, given the significant sums skimmed by Carcione and Biz Jet Consultants.

111.    Carcione and Biz Jet Consultants made the aforementioned misrepresentations with the intention of inducing Plaintiff's reliance on those misrepresentations, in order to cause Plaintiff to enter into the Second Purported Agreement, pursuant to which Carcione and Biz Jet Consultants received approximately $1.8 million more than they were entitled to.

112.    Plaintiff relied, to its detriment, on the aforementioned misrepresentations. Absent such misrepresentations by Carcione and Biz Jet Consultants, Plaintiff would have never executed the Second Purported Agreement.

113.    Plaintiff's reliance on Carcione's and Biz Jet Consultants' misrepresentations was reasonable.

114.    As a result of Plaintiff's detrimental reliance on Carcione's and Biz Jet Consultants' misrepresentations, Plaintiff has suffered substantial economic damages.

### AS AND FOR A FIFTH CAUSE OF ACTION
### (ACCOUNTING AGAINST CARCIONE AND BIZ JET CONSULTANTS)

115.    Plaintiff repeats and realleges each and every allegation contained in each of the foregoing paragraphs hereof as if set forth in full herein.

18

116.    Carcione's and Biz Jet Consultants' breaches of duty and misconduct require an accounting to determine the full extent of the financial windfall Carcione and Biz Jet Consultants obtained at Plaintiff's expense.

117.    As Plaintiff's agents, and by receiving Plaintiff's money into their escrow account, there is a confidential and fiduciary relationship between Plaintiff and Carcione and Biz Jet Consultants. Given the breaches of that duty described herein, Plaintiff is entitled to a full equitable accounting of all monies paid by Plaintiff to Carcione and Biz Jet Consultants.

### AS AND FOR A SIXTH CAUSE OF ACTION
### (FRAUD AGAINST PRERO AND PEGASUS)

118.    Plaintiff repeats and realleges each and every allegation contained in each of the foregoing paragraphs hereof as if set forth in full herein.

119.    Prero and Pegasus knew that once Plaintiff purchased the 772 Plane, Prero and Pegasus would enter into an agreement to use the Planes as part of Prero and Pegasus's charter airplane business, which would be profitable for Prero and Pegasus.

120.    In order to induce Plaintiff to purchase the 772 Plane, in or about July 2010, Prero, on behalf of himself and his company Pegasus, specifically represented to Plaintiff that the price of $7.95 million for the 772 Plane was the best price possible.

121.    Specifically, in or about July 2010, Plaintiff called Prero and informed Prero of an offer Carcione and Biz Jet Consultants made to sell Plaintiff the 772 Plane. Plaintiff asked Prero during that phone call if Plaintiff could trust Carcione and Biz Jet Consultants. Prero responded on behalf of himself and Pegasus that Plaintiff should trust Carcione and Biz Jet Consultants because the price offered on the 772 Plane was the lowest price possible.

19

122.    During that same phone conversation in or about July 2010, Prero, on behalf of himself and Pegasus, also represented to Plaintiff that if Plaintiff did not purchase the 772 Plane for $7.95 million, Plaintiff would end up paying more for a lower quality aircraft.

123.    Prero also stated, on behalf of himself and Pegasus, that Plaintiff should permit Carcione and Biz Jet Consultants to handle the entire transaction on Plaintiff's behalf, since Carcione and Biz Jet Consultants would ensure that Plaintiff received the best price and terms possible on the 772 Plane.

124.    Prero and Pegasus knew that these representations were false since they knew that Carcione and Biz Jet Consultants were doing a simultaneous transaction whereby the 772 Plane was being purchased for $6.15 million and immediately sold to Plaintiff for $1.8 million more.

125.    Furthermore, Prero and Pegasus agreed with Carcione and Biz Jet Consultants that Prero and Pegasus would receive a secret kickback from Carcione and Biz Jet Consultants where they would share in the ill-gotten $1.8 million earned on the purchase and sale of the 772 Plane.

126.    The representations made by Prero and Pegasus were material to Plaintiff's decision to purchase the 772 Plane.

127.    Prero and Pegasus made the representations with the intent that Plaintiff would rely upon them in purchasing the 772 Plane.

128.    Prero's and Pegasus's representations were false, as described herein.

129.    Prero and Pegasus were aware of the falsity of their representations at the time that the representations were made.

130.    Plaintiff actually relied on Prero's and Pegasus's representations when Plaintiff purchased the 772 Plane.

131.     Plaintiff's reliance on Prero's and Pegasus's representations was reasonable in that Plaintiff had no knowledge of the falsity of the representations and had no reason to know that the representations were false.

132.     Prero's and Pegasus's actions in making the above misrepresentations to Plaintiff as an inducement to purchase the 772 Plane were malicious, oppressive and fraudulent.

133.     By reason of Prero's and Pegasus's fraudulent representations, Plaintiff has been damaged in an amount to be determined at trial, but in any event, not less than the amount that Prero and Pegasus received from Biz Jet Consultants and Carcione on the purchase and sale of the 772 Plane that was not disclosed to Plaintiff.

134.     Plaintiff is also entitled to punitive damages against Prero and Pegasus for their tortious and malicious fraud in an amount to be determined at trial, but not less than $1.5 million.

**AS AND FOR A SEVENTH CAUSE OF ACTION**
**(AIDING AND ABETTING BREACH OF FIDUCIARY DUTIES AGAINST PRERO AND PEGASUS)**

135.     Plaintiff repeats and realleges each and every allegation contained in each of the foregoing paragraphs hereof as if set forth in full herein.

136.     As an agent of Plaintiff's, Carcione and Biz Jet Consultants owed a fiduciary duty to Plaintiff to exercise good faith and loyalty in the performance of their duties.

137.     Prero and Pegasus were aware that Carcione and Biz Jet Consultants were purporting to act as Plaintiff's agent in the purchase of the 772 Plane. Prero and Pegasus referred Carcione and Biz Jet Consultants to Plaintiff, representing to Plaintiff in late 2009 (with respect to the 771 Plane) and again in June 2010 (with respect to the 772 Plane) that Carcione and Biz Jet Consultants were airplane brokers who would act on Plaintiff's behalf.

138.     Carcione and Biz Jet Consultants breached that duty by, inter alia: (a) lying to

21

Plaintiff about the price for the 772 Plane; and (b) lying to Plaintiff that Carcione and Biz Jet Consultants were acting as Plaintiff's agents when, in reality, Carcione's and Biz Jet Consultants' interests were adverse to Plaintiff.

139.    Prero and Pegasus substantially assisted Carcione and Biz Jet Consultants in breaching their fiduciary duties by: (i) lying to Plaintiff about the true price of the 772 Plane; and (ii) assisting Carcione and Biz Jet Consultants in conducting all of the pre-purchase due diligence on behalf of Plaintiff on the 772 Plane; and (iii) lying to Plaintiff about Carcione and Biz Jet Consultant's motives and loyalty; all in exchange for an undisclosed payment of half of the profits earned on the fraud by Carcione and Biz Jet Consultants.

140.    As a result of Prero's and Pegasus's aiding and abetting, Plaintiff was damaged in an amount to be determined at trial, but in any event, not less than the amount that Prero and Pegasus received from Biz Jet Consultants and Carcione on the purchase and sale of the 772 Plane that was not disclosed to Plaintiff.

## AS AND FOR AN EIGHTH CAUSE OF ACTION
## (UNJUST ENRICHMENT AGAINST PRERO AND PEGASUS)

141.    Plaintiff repeats and realleges each and every allegation contained in each of the foregoing paragraphs hereof as if set forth in full herein.

142.    Prero and Pegasus were enriched by and benefited from the money paid to them by Carcione and Biz Jet Consultants which was not disclosed to Plaintiff.

143.    Prero and Pegasus have been enriched in an amount to be determined at trial, but in any event, not less than the amount that Prero and Pegasus received from Biz Jet Consultants and Carcione on the purchase and sale of the 772 Plane that was not disclosed to Plaintiff.

22

144.    Prero and Pegasus have therefore been unjustly enriched at Plaintiff's expense, given the money received by Prero and Pegasus which was never disclosed to Plaintiff.

145.    Circumstances are such that equity and good conscience require Prero and Pegasus to make restitution to Plaintiff in an amount to be determined at trial, but in no event less than the amount that Prero and Pegasus received from Biz Jet Consultants and Carcione on the purchase and sale of the 772 Plane that was not disclosed to Plaintiff.

**WHEREFORE**, Plaintiff Transnational Management Systems II, LLC demands judgment against Defendants Anthony Carcione, Biz Jet Consultants, LLC, Tim Prero and Pegasus Elite Aviation, Inc. as follows:

(a) for compensatory damages according to the proof, but in any event, in an amount not less than $1,912,000 as a result of Defendants' breaches contract, breaches of fiduciary duty, aiding and abetting fiduciary duty, fraud, fraudulent inducement, unjust enrichment and conversion described herein;

(b) for an order providing that Carcione and Biz Jet Consultants account for all monies they received from Plaintiff;

(c) for punitive damages according to the proof, but in any event, in an amount not less than $1.5 million as a result of Defendants' malicious and appalling conduct described herein; and

(d) prejudgment interest, the costs and disbursements of this action, including reasonable attorneys' fees, and for such other and further relief as the Court may deem just and proper.

23

Dated: New York, New York
      March 14, 2016

                                    DAVIDOFF HUTCHER & CITRON LLP

                                    By: _____

                                        Larry Hutcher
                                        lkh@dhclegal.com
                                        Joshua Krakowsky
                                        jsk@dhclegal.com
                                  Attorneys for Plaintiff
                                  605 Third Avenue
                                  New York, New York 10158
                                  (212) 557-7200

24