USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: <u>December 5, 2016</u>

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
                                    :

TRANSNATIONAL MANAGEMENT     :
SYSTEMS II, LLC,                          :

                Plaintiff,       :

                                     :         14-cv-2151 (KBF)

            -v-                   :

                                     :        <u>OPINION & ORDER</u>

ANTHONY CARCIONE, et al.,     :

                Defendants.     :

------------------------------------------------------------ X

KATHERINE B. FORREST, District Judge:

      Plaintiff Transnational Management Systems II, LLC ("TMS II") brings this diversity action against two sets of defendants, Anthony Carcione ("Carcione") and Biz Jet Consultants, LLC ("Biz Jet") (collectively, the "Carcione defendants"), and Tim Prero ("Prero") and Pegasus Elite Aviation, Inc. ("Pegasus") (collectively, the "Prero defendants").[1] After several attempts to state a claim, plaintiff filed a third amended complaint with eight causes of action, all of which turn on one issue. Plaintiff believes that, unbeknownst to it, the price TMS II paid to purchase an airplane improperly embedded a higher-than-expected fee for the defendants. Plaintiff has not alleged that the plane was not delivered pursuant to the sales contract, or that it was defective. Defendants have now moved to dismiss. For the reasons stated below, those motions are GRANTED.

---

[1] In its February 23, 2016 decision, the Court dismissed without prejudice the claims of then-Plaintiff Adam Victor, sole owner of TMS II, against the Prero defendants. (Feb. 23, 2016 Order 7, ECF No. 111.) The Third Amended Complaint ("TAC") that was filed following that decision lists only one plaintiff, TMS II. (TAC ¶¶ 9-13, ECF No. 113.) It is undisputed that TMS II's claims are the only ones remaining in the lawsuit and, accordingly, the only ones the Court must address.

I.    FACTUAL AND PROCEDURAL BACKGROUND[2]

TMS II is in the private air charter business. (TAC ¶ 45.) Carcione is the sole member of Biz Jet, which "purports to provide brokerage services for purchasing and maintaining private aircrafts." (*Id.* ¶ 11.) Pegasus is Prero's company, and is an air charter business. (*Id.* ¶¶ 64, 66.)

The Carcione defendants purchased two planes (the "771 Plane" and the "772 Plane") for plaintiff. (*Id.* ¶ 4.) The Court previously dismissed all claims related to the 771 Plane on *forum non conveniens* grounds. Accordingly, only the claims involving the 772 Plane remain before this Court.[3] (*See* Mar. 16, 2015 Mem., ECF No. 57.) TMS II used the Carcione defendants to purchase the 772 Plane "at the recommendation and urging of the Prero Defendants." (TAC ¶ 46.) "Defendants (including the Prero Defendants) performed pre-purchase due diligence on the 772 Plane on behalf of Plaintiff," (*id.* ¶ 49; *see also id.* ¶ 63), and the Carcione defendants then told TMS II that the 772 Plane's purchase price was $7.95 million, (*id.* ¶ 50). "Defendants (including Prero and Pegasus) represented that the price of $7.95 million for the 772 Plane was at the bottom of the market, so that even under

---

[2] The following facts are taken from the TAC and the Aircraft Purchase Agreement ("Purchase Agreement") referenced by and incorporated therein, which the Court accepts as true for purposes of the present motions. The Court here recounts only those facts relevant to resolving the pending motions.

[3] Despite the Court's previous ruling, plaintiff continues to include allegations relating to the Carcione defendants' involvement in an "engine rebuild" of the 771 Plane. The Court dismissed "[*a*]*ll claims* related to the 771 Plane" in its March 16, 2015 opinion, which therefore included claims related to the engine rebuild of the 771 Plane. (Mar. 16, 2015 Mem. 10 (emphasis added).) In particular, the purchase agreement for the 771 Plane explicitly stated that plaintiff desired to purchase the 771 Plane "together with two (2) . . . engines," (771 Plane Agreement 1, ECF No. 22), and the forum selection clause in that agreement covered "all claims, disputes, actions or suits arising out of, connected with or related to [the] agreement instituted by or against either party," (*id.* § 19). In addition, the parties do not mention the engine rebuild claim relating to the 771 Plane in their briefs. Accordingly, the Court does not address that claim.

the worst case scenario, Plaintiff would be able to at least recover the purchase price." (*Id.* ¶ 51.) In or about July 2010, "Prero, acting on his own behalf and on behalf of his company Pegasus, represented to Plaintiff that [the] $7.95 million price was the best possible price for purchasing the 772 Plane," and that, if TMS II did not purchase the plane at that price, it "would end up paying more for a lower quality aircraft." (*Id.* ¶ 64.)

TMS II and Carcione, on behalf of Biz Jet, signed an Aircraft Purchase Agreement (the "Purchase Agreement") with an effective date of September 3, 2010. (Purchase Agreement, ECF No. 123-1.) The Purchase Agreement recognizes Biz Jet as the seller and TMS II as the buyer of the 772 Plane;[4] identifies the purchase price of the 772 Plane as $7.95 million; includes a disclaimer of warranties; defines the agreement as the only one governing the sale and purchase of the aircraft; and contains a clause stating that the parties either received, or knowingly and voluntarily waived, independent legal advice about entering into the Purchase Agreement. (*Id.*) Absent from the Purchase Agreement is any representation by the seller regarding the value of the 772 Plane (indeed, there is a specific disclaimer of such a representation), its own acquisition cost, or the amount of its profit on the transaction. Also absent from the Purchase Agreement is any representation that the Prero defendants will or will not obtain a fee as a result of the acquisition.

---

[4] The Agreement identifies the buyer as "TransManagement Systems II, LLC," as opposed to "Transnational Management Systems II, LLC," as stated in the TAC. (*See, e.g.*, Purchase Agreement 1, 11.) The parties assume that plaintiff and the 772 Plane's buyer are the same entity, and the Purchase Agreement and briefing make clear that is in fact the case.

On or about September 17, 2010, Plaintiff wired $7,979,135 to the Carcione defendants' escrow account for the 772 Plane, a $40,000 fee for the Carcione defendants' services, and miscellaneous costs. (*Id.* ¶¶ 52-53.) According to the TAC, the Carcione defendants then arranged a "simultaneous transaction" in which a single-purpose entity wholly owned by Carcione purchased the 772 Plane from the seller for $6.15 million and sold it to the Carcione defendants for $7.95 million, netting a $1.8 million profit for the single-purpose entity. (*Id.* ¶¶ 55-56.) According to plaintiff, this series of events meant that the Carcione defendants, who then sold the 772 Plane to TMS II for $7.95 million, represented to plaintiff that the 772 Plane's purchase price was $1.8 million more than it actually cost. (*Id.* ¶¶ 57-58.) Plaintiff alleges that the Carcione defendants shared some of the "$1.8 million in illicit gains" with "Prero and/or Pegasus" for their "substantial assistance in perpetrating this fraud." (*Id.* ¶ 60.)

According to plaintiff, "[t]o the extent the [Purchase Agreement] was fully executed, it was fraudulently induced by [the Carcione defendants'] specific misrepresentations that (i) they were acting as Plaintiff's agent, and not as a seller whose interests were not aligned with Plaintiff; (ii) [] they were being compensated a total of the $40,000 fixed fee for their work in negotiating the purchase of Plane 772; (iii) [] the price of the 772 Plane was at the bottom of the market, which is belied by [the Carcione defendants] pocketing approximately $1.8 million on the sale; (iv) [] Biz Jet Consultants had the authority to sell the 772 Plane at the time it

entered [into] the [Purchase Agreement]; and (v) [] Biz Jet Consultants had no conflict in entering into the [Purchase Agreement]." (*Id.* ¶ 75.)

On March 27, 2014, the Carcione defendants removed this action from New York State Court, New York County pursuant to this Court's diversity jurisdiction, 28 U.S.C. § 1332(a). (Notice Of Removal, ECF No. 2.) In March 2015, U.S. District Judge Analisa Torres dismissed all claims related to the 771 Plane on *forum non conveniens* grounds. (*See* Mar. 16, 2015 Mem.) On February 23, 2016, Judge Torres granted in part and denied in part the Prero defendants' motion to dismiss, preserving only the unjust enrichment claim against the Prero defendants. (*See* Feb. 23, 2016 Order.) On March 15, 2016, TMS II filed the TAC. As to the Carcione defendants, the TAC alleges breach of fiduciary duty (Count One), breach of contract (Count Two), fraud (Count Three), fraudulent inducement (Count Four), and accounting (Count Five). Against the Prero defendants, the TAC alleges fraud (Count Six), aiding and abetting breach of fiduciary duties (Count Seven), and unjust enrichment (Count Eight). On May 3, 2016, the Carcione defendants filed a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). (ECF No. 122.) On May 4, 2016, pursuant to Federal Rule of Civil Procedure 12(b)(6), the Prero defendants filed a partial motion to dismiss TMS II's claims of fraud and aiding and abetting breach of fiduciary duties. (ECF No. 126.) Both motions were fully submitted as of May 26, 2016. (ECF Nos. 131, 133.) This case was transferred to the undersigned on November 22, 2016.

## II.   LEGAL PRINCIPLES

### A.   Federal Rules of Civil Procedure 12(b)(6) and 12(c)

A claim is subject to dismissal under Federal Rule of Civil Procedure 12(b)(6) where it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion to dismiss, a claimant must provide grounds upon which their claim rests through "factual allegations sufficient 'to raise a right to relief above the speculative level.'" *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). In other words, the complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Starr v. Sony BMG Music Entm't*, 592 F.3d 314, 321 (2d Cir. 2010) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

"The standard for granting a Rule 12(c) motion for judgment on the pleadings is identical to that of a Rule 12(b)(6) motion for failure to state a claim." *Patel v. Contemporary Classics of Beverly Hills*, 259 F.3d 123, 126 (2d Cir. 2001) (citations omitted). The court must accept as true all factual allegations contained in the complaint and draw all reasonable inferences in the non-moving party's favor. *Bank of New York v. First Millennium, Inc.*, 607 F.3d 905, 922 (2d Cir. 2010). "To survive a Rule 12(c) motion, the complaint 'must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Id.* (quoting *Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir. 2010)). "A claim has facial plausibility when

the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

In deciding both Rule 12(b)(6) and Rule 12(c) motions, a court may properly consider documents attached to or referenced in a complaint. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (Where "plaintiff has actual notice of all the information in the movant's papers and has relied upon these documents in framing the complaint the necessity of translating a Rule 12(b)(6) motion into one under Rule 56 is largely dissipated." (*quoting Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991))); *Daniels ex rel. Daniels v. Comm'r of Soc. Sec.*, 456 F. App'x 40, 41 (2d Cir. 2012) (summary order) (explaining that, in deciding a motion under Rule 12(c), a court may consider "documents attached to the pleadings as exhibits or incorporated by reference" and documents "integral" to the pleadings) (citation and internal quotation marks omitted). In this case, the Purchase Agreement is referenced in and integral to the TAC.

III.        ANALYSIS

    A.    The Carcione Defendants

With respect to the Carcione defendants, the TAC alleges breach of fiduciary duty, breach of contract, fraud, fraudulent inducement, and accounting. For the reasons stated below, the Carcione defendants' motion for judgment on the pleadings is granted.

    1.    Breach of Fiduciary Duty

Under New York law,[5] an actionable breach of fiduciary duty claim is comprised of "(i) the existence of a fiduciary duty; (ii) a knowing breach of that duty; and (iii) damages resulting therefrom." *Johnson v. Nextel Commc'ns, Inc.*, 660 F.3d 131, 138 (2d Cir. 2011) (citing *Barrett v. Freifeld*, 883 N.Y.S.2d 305, 308 (2d Dep't 2009)). It is well established that "parties to a commercial contract do not ordinarily bear a fiduciary relationship to one another unless they specifically so agree." *Calvin Klein Trademark Trust v. Wachner*, 123 F. Supp. 2d 731, 733-34 (S.D.N.Y. 2000); *see also Clark-Fitzpatrick, Inc. v. Long Island R.R. Co.*, 516 N.E.2d 190, 193 (N.Y. 1987) ("[A] simple breach of contract is not to be considered a tort unless a legal duty independent of the contract itself has been violated."). And "where parties have entered into a contract, courts look to that agreement to discover the nexus of the parties' relationship . . . . If the parties do not create their own relationship of higher trust, courts should not ordinarily transport them to the higher realm of

---

[5] The Purchase Agreement provides that the "the rights and obligations of the parties" are governed by New York law, irrespective of choice of law rules, (Purchase Agreement Art. 11.12), and the parties are in agreement that New York law applies. Accordingly, the Court applies New York law in resolving the present motion. *See Cargill, Inc. v. Charles Kowsky Res., Inc.*, 949 F.2d 51, 55 (2d Cir. 1991) ("In the absence of a violation of a fundamental state policy, New York courts generally defer to the choice of law made by the parties to a contract." (citation omitted)).

relationship and fashion the stricter duty for them." *Krys v. Butt*, 486 F. App'x 153, 155 (2d Cir. 2012) (quoting *EBC I, Inc. v. Goldman, Sachs & Co.*, 832 N.E.2d 26, 31 (N.Y. 2005)). Further, fiduciary obligations are not imposed simply because one party is more experienced than the other. *See Boley v. Pineloch Assocs., Ltd.*, 700 F. Supp. 673, 681 (S.D.N.Y. 1988) ("Allegations of reliance on another party with superior expertise, standing by themselves, will not suffice.").

Plaintiff argues that the Carcione defendants were TMS II's agent for the negotiation of the 772 Plane's purchase, and that they breached their fiduciary duty to plaintiff by lying about the price of the 772 Plane and by not disclosing that their interests were, in fact, adverse to TMS II. (TAC ¶¶ 84, 85, 87.) Because plaintiff's breach of fiduciary claim simply repeats its breach of contract claim, it fails. *See Clark–Fitzpatrick, Inc.*, 516 N.E.2d at 194 ("Each of these allegations, however, is merely a restatement, albeit in slightly different language, of the 'implied' contractual obligations asserted in the cause of action for breach of contract." (citation omitted)). In particular, plaintiff's fiduciary duty claim boils down to the allegation that the Carcione defendants lied about the 772 Plane's purchase price so they "could steal the difference between the actual price and [their] fictional price." (TAC ¶ 85.) As the Court will discuss in more detail below, plaintiff's breach of contract claim likewise relies on the allegation that the Carcione defendants "[took] over $1.8 million for [their] services in negotiating the closing of the 772 Plane," or the difference in price between the actual and allegedly "fictional" price. (*Id.* ¶ 94.)

9

Accordingly, because plaintiff's breach of fiduciary duty claim duplicates its breach of contract claim, it cannot be maintained.

This conclusion is supported by the fact that nothing in the Purchase Agreement suggests that the parties intended to create a fiduciary relationship. In fact, Article 6 of the Purchase Agreement explicitly states that the seller, Biz Jet, will not be held liable for "any obligation, liability, right, claim or remedy *in tort*." (Purchase Agreement Art. 6.1(b) (emphasis added).) There is no basis for the Court to ignore this provision, especially considering the unwillingness of New York courts to fashion additional obligations on top of ordinary commercial contracts. Accordingly, the breach of fiduciary duty claim is dismissed.

2.   <u>Breach of Contract</u>

In order to state a claim for beach of contract under New York law, a plaintiff must allege: "(1) the existence of a contract; (2) a breach of that contract; and (3) damages resulting from the breach." *Nat'l Market Share, Inc. v. Sterling Nat'l Bank*, 392 F.3d 520, 525 (2d Cir. 2004) (citations omitted). When the parties' intent is clear (i.e., unambiguous), a contract "must be enforced according to the plain meaning of its terms." *Lockheed Martin Corp. v. Retail Holdings, N.V.*, 639 F.3d 63, 69 (2d Cir. 2011) (citing *South Rd. Assocs., LLC v. IBM Corp.*, 826 N.E.2d 806, 809 (N.Y. 2005)). Unambiguous contracts should be construed according to their terms, without resort to extrinsic evidence. *Law Debenture Trust Co. of New York v. Maverick Tube Corp.*, 595 F.3d 458, 467 (2d Cir. 2010) (citations omitted).

TMS II alleges that it contracted to pay the Carcione defendants a $40,000 fixed fee to negotiate the 772 Plane's purchase, and that the Carcione defendants breached that agreement by instead pocketing $1.8 million for their services. (TAC ¶¶ 47, 93, 94.) To the extent that plaintiff is alleging that there was a contract separate from the Purchase Agreement, or an oral agreement that altered its terms, that argument easily can be dispensed with as improper extrinsic evidence given the unambiguous terms of the Purchase Agreement. *See Law Debenture Trust Co.*, 595 F.3d at 467. In addition, one of the Purchase Agreement's unambiguous terms is a merger clause, which states that the Purchase Agreement is the entire agreement between the signatories. (Purchase Agreement Art. 11.4 ("This Agreement (including the exhibits hereto) sets forth the entire agreement among the parties with respect to the sale and purchase of the Aircraft and . . . supersedes any and all other agreements, understandings, communications, representations or negotiations, whether oral or written, relating thereto.").)

To the extent that TMS II is arguing that the Carcione defendants breached the Purchase Agreement, the plain language of that contract and the history of the sales transaction demonstrate otherwise. In particular, the Purchase Agreement clearly states that TMS II will buy the 772 Plane from Biz Jet for $7.95 million. There is nothing in the TAC to suggest that TMS II did not pay the purchase price, or that Biz Jet did not deliver the plane. Further, the Purchase Agreement provides that "[e]ach of the parties has received independent legal advice from legal counsel of her or its choice with respect to the advisability of entering into [the] Agreement

and its terms or has knowingly and voluntarily waived its right to do so." (*Id.* Art. 11.15.) Given that provision and the clear language of the Purchase Agreement, plaintiff cannot now argue that the Purchase Agreement should not be enforced according to its terms. *See G5 Techs., Inc. v. IBM Corp.*, 2005 WL 2271741, at *9 (S.D.N.Y. Sept. 19, 2005) ("Th[e] principle [of enforcing a contract according to its terms] is particularly important 'where commercial certainty is a paramount concern, and where the instrument was negotiated between sophisticated, counseled business people negotiating at arm's length.'" (quoting *South Rd. Assocs., LLC*, 826 N.E.2d at 809)). Plaintiff could have included a representation in the Purchase Agreement regarding the Carcione defendants' acquisition cost of the 772 Plane; it did not.

For these reasons, plaintiff's breach of contract claim against the Carcione defendants is dismissed.

### 3.   Fraud & Fraudulent Inducement

Plaintiff's fraud claims are subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b), which specifies that a plaintiff must "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). A complaint predicated upon fraud must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Rombach v. Chang*, 355 F.3d 164, 170 (2d Cir. 2004) (quotation marks omitted). Failure to do so requires dismissal of the complaint. *Id.*

12

To state a claim for fraud or fraudulent inducement under New York law, a party must allege material misrepresentation of a fact, knowledge of its falsity, an intent to induce reliance, justifiable reliance by the plaintiff, and damages.[6] *See Eurycleia Partners, LP v. Seward & Kissel, LLP*, 910 N.E.2d 976, 979 (N.Y. 2009). "It is black letter law in New York that a claim for common law fraud will not lie if the claim is duplicative of a claim for breach of contract." *EQT Infrastructure Ltd. v. Smith*, 861 F. Supp. 2d 220, 233 (S.D.N.Y. 2012) (citations omitted). To maintain a separate claim for fraud that does not merge with a breach of contract claim, a plaintiff must "(1) demonstrate[] a legal duty separate from the duty to perform under the contract; (2) point[] to a fraudulent misrepresentation that is collateral or extraneous to the contract; or (3) seek[] special damages that are unrecoverable as contract damages." *Merrill Lynch & Co. v. Allegheny Energy, Inc.*, 500 F.3d 171, 183 (2d Cir. 2007) (citing *Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.*, 98 F.3d 13, 20 (2d Cir. 1996)). With respect to collateral or extraneous fraudulent misrepresentations, "New York distinguishes between a promissory statement of what will be done in the future that gives rise only to a breach of contract cause of action and a misrepresentation of a present fact that gives rise to a separate cause of action for fraudulent inducement." *Id.* (citation omitted).

For its fraud claim in Count Three, plaintiff alleges that the Carcione defendants knowingly and falsely represented that they "would only charge a fixed fee of $40,000" to negotiate the purchase of the 772 Plane in order to "induce

---

[6] "The elements of fraudulent inducement are substantially the same as those for common law fraud." *Sawabeh Info. Servs. Co. v. Brody*, 832 F. Supp. 2d 280, 297-98 (S.D.N.Y. 2011).

Plaintiff to allow [the Carcione defendants] to act as [its] agent." (TAC ¶ 98.) For its fraudulent inducement claim in Count Four, plaintiff alleges that the Carcione defendants knowingly made three false, material misrepresentations in order to induce TMS II to enter into the Purchase Agreement: (i) they were acting as TMS II's agent, and not as a seller whose interests were not aligned with TMS II; (ii) they were being compensated $40,000 for their work in negotiating the purchase of the 772 Plane; and (iii) the 772 Plane's purchase price was "at the bottom of the market." (TAC ¶¶ 109, 111.)

As an initial matter, plaintiff's allegations do not meet the heightened pleading requirements of Rule 9(b). With regard to the allegations about the parties' relationship, the TAC states that "the Carcione Defendants offered to give Plaintiff a discount, and only charge it a fixed fee of $40,000 . . . for negotiating the purchase of the 772 Plane." (TAC ¶ 47.) The TAC does not include who made that statement, or where and when it was made. Further, although it may have been TMS II's understanding that the Carcione defendants were acting as its agent, nowhere in the TAC does plaintiff identify any specific statements made by the Carcione defendants to that effect. Conclusory allegations that the Carcione defendants made "specific representations" that they "were acting as Plaintiff's agent, and not as a seller whose interests were not aligned with Plaintiff" are insufficient to meet Rule 9(b)'s heightened pleading requirements. (TAC ¶ 75.) In terms of the allegations regarding the 772 Plane's price, the TAC's statement that "Defendants (including Prero and Pegasus) represented that the price of $7.95 million for the 772 Plane

was at the bottom of the market" also lacks the "who, where, and when" necessary to satisfy Rule 9(b). (*Id.* ¶ 51.) It also lacks an allegation of falsity. Accordingly, plaintiff has not met the heightened pleading requirements for fraud claims.

Further, it would be futile for plaintiff to correct these pleading deficiencies because TMS II's fraud claim in Count Three merges with its breach of contract claim in Count Two. First, the Court already has determined that plaintiff cannot demonstrate "a legal duty separate from the duty to perform under the contract." *Allegheny Energy, Inc.*, 500 F.3d at 183. Second, the alleged fraudulent misrepresentations identified in Count Three are not "collateral or extraneous to the contract," *id.*, which included an integration clause stating that the Purchase Agreement is the entire agreement among the parties, as they all center around plaintiff's allegation that the Carcione defendants agreed to be TMS II's agent for a fixed fee of $40,000.[7] Finally, TMS II has not sought "special damages that are unrecoverable as contract damages," since "a general request for punitive damages is not enough to differentiate the damages recoverable for fraud from those sought for breach of contract." *Russell Publ'g Grp., Ltd. v. Brown Printing Co.*, 2014 WL 1329144, at *3 (S.D.N.Y. Apr. 3, 2014); *see also Krantz v. Chateau Stores of Canada*

---

[7] Even if TMS II could allege that the fraud was collateral to the contract, all of the Carcione defendants' alleged misrepresentations relating to Count Three—that they "offered to give Plaintiff a discount, and only charge it a fixed fee of $40,000," (*id.* ¶ 47), "agreed to act on behalf of Plaintiff in closing the transactions whereby Plaintiff would purchase the 772 Plane," (*id.* ¶ 97), and represented that "they would only charge a fixed fee of $40,000," (*id.* ¶ 98)—are "promissory statement[s] of what will be done in the future" and, accordingly, "give[] rise only to a breach of contract cause of action." *Allegheny Energy, Inc.*, 500 F.3d at 184; *see also Ritchie Capital Mgmt., L.L.C. v. Coventry First LLC*, 2008 WL 542596, at *4 (S.D.N.Y. Feb. 29, 2008) (denying a motion to reconsider a fraud claim where the complaint did not describe "any misrepresentation of a present fact that was collateral or extraneous to the contract and which induced the plaintiffs to enter the contract").

*Ltd.*, 683 N.Y.S.2d 24, 25 (1st Dep't 1998). Accordingly, TMS's fraud claim is dismissed.

The first two misrepresentations that TMS II identifies in its fraudulent inducement claim (Count Four)—related to the Carcione defendants' alleged statements that they would act as plaintiff's agent for $40,000—suffer from the same problems as plaintiff's fraud claim in Count Three, and must be dismissed. What remains in Count Four is the allegation that the Carcione defendants' said that $7.95 million for the 772 Plane was at "the bottom of the market." (TAC ¶¶ 51, 109.) Reading the TAC in a light most favorable to plaintiff, this statement is nothing more than a statement of opinion. *See N. Grp. Inc. v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 22 N.Y.S.3d 421, 421 (1st Dep't 2016) ("Defendants' alleged misrepresentations are not actionable as fraud because they are mere puffery, opinions of value or future expectations, rather than false statements of value." (citation and internal quotation marks omitted)); *Augsbury v. Adams*, 522 N.Y.S.2d 691 (3d Dep't 1987). However, even were this Court to accept it as a misrepresentation of present fact, it nonetheless fails to support a claim here as plaintiff has failed adequately to allege justifiable reliance.

Under New York law, "[a] party cannot claim reliance on a misrepresentation when he or she could have discovered the truth with due diligence." *KNK Enters., Inc. v. Harriman Enters., Inc.*, 824 N.Y.S.2d 307, 307 (2d Dep't 2006). "[A] signatory to a contract has the responsibility to read the contract he or she signs and is bound by the terms that are in an executed contract." *Paraco Gas Corp. v. Travelers Cas.*

16

*and Sur. Co. of Am.*, 51 F. Supp. 3d 379, 393 (S.D.N.Y. 2014). Here, TMS II signed the very contract that identified it as the buyer of the 772 Plane that Biz Jet would sell for $7.95 million, included no mention of a $40,000 fixed fee for the Carcione defendants, and contained a provision representing that the parties received, or knowingly and voluntarily waived, independent advice from counsel. (Purchase Agreement Art. 11.15.) Further, although a "'general and vague merger clause' is insufficient to warrant exclusion of parol evidence showing fraud," if the contracting party "disclaims 'the existence of or reliance on specified representations,' it will not be allowed to claim it entered into the contract in reliance thereon." *Aetna Cas. and Sur. Co. v. Aniero Concrete Co.*, 404 F.3d 566, 575, 576 (2d Cir. 2005) (citation and internal quotation marks omitted).[8] Here, the Purchase Agreement's merger clause specifically provided that TMS II "agrees and acknowledges that" Biz Jet disclaimed any warranties or representations with respect to the "value" of the aircraft. (Purchase Agreement Art. 6.1(a).) Accordingly, given the clear terms of the Purchase Agreement, its specific integration clause, and the fact that TMS II was a business entity engaged in an arm's length transaction, plaintiff has no basis to argue that it justifiably relied on any fraudulent misrepresentation by the Carcione defendants that the price of the 772 Plane was at "the bottom of the market."

---

[8] "The specificity requirement is further relaxed when the contracting parties are 'sophisticated business people,' and the disclaimer clause is the result of negotiations between them." *Id.* at 576 (quoting *Citibank, N.A. v. Plapinger*, 485 N.E.2d 974, 977 (N.Y. 1985)).

In its response in opposition, TMS II points to other representations in the Purchase Agreement that it alleges were false.[9] (Resp. Opp'n 17-18, ECF No. 130.) First, plaintiff argues that Article 5, which states that the Purchase Agreement and sale of the 772 Plane "do not conflict with or result in any breach of any of the terms of [sic] constitute a default under any documents[,] instrument, or agreement to which Seller is a party," is false because of the Carcione defendants' agreement to act as TMS II's agent for $40,000. (Purchase Agreement Art. 5.2(b).) Because it "ha[d] the responsibility to read the contract [it] sign[ed]," TMS II cannot demonstrate justifiable reliance. *Paraco Gas Corp.*, 51 F. Supp. 3d at 393. Second, plaintiff alleges, in a variety of forms, that the Carcione defendants falsely represented in the Purchase Agreement that they had the authority to sell Plane 772 when, in fact, Biz Jet did not own the plane at the time the Purchase Agreement was executed and was not licensed to sell any aircraft. As the Carcione defendants point out, however, there is no dispute that Biz Jet sold Plane 772 to TMS II. "[T]he law applies a common sense rule that a seller is allowed a reasonable time after payment by the buyer during which he can purchase the goods required to meet his promise." *Leveraged Leasing Admin. Corp. v. PacifiCorp Capital, Inc.*, 87 F.3d 44, 48 (2d Cir. 1996) (citation omitted). Further, the Purchase Agreement explicitly contemplated a "Closing Date," when the seller transfers the aircraft to the buyer for the stated purchase price, that was separate from the "Effective Date" of September 3, 2010. (Purchase Agreement Art. 1.1.)

---

[9] Although these allegations were not included in Count Four of the TAC, they are included in its "factual allegations" section. (*See* TAC ¶¶ 73, 74.)

Accordingly, TMS II's fraud claims against the Carcione defendants are dismissed.

### 4. Accounting

A plaintiff seeking an accounting under New York law must establish "(1) relations of a mutual and confidential nature; (2) money or property entrusted to the defendant imposing upon him a burden of accounting; (3) that there is no adequate legal remedy; and (4) in some cases, a demand for an accounting and a refusal." *Dayan Enters., Corp. v. Nautica Apparel, Inc.*, 2003 WL 22832706, at *1 (S.D.N.Y. Nov. 26, 2003). "The right to an accounting is premised upon the existence of a confidential or fiduciary relationship and a breach of the duty imposed by that relationship respecting property in which the party seeking the accounting has an interest." *Ctr. for Rehabilitation and Nursing at Birchwood, LLC v. S & L Birchwood, LLC*, 939 N.Y.S.2d 78, 80 (2d Dep't 2012) (quoting *Palazzo v. Palazzo*, 503 N.Y.S.2d 381 (1st Dep't 1986)).

Plaintiffs' accounting claim fails at the initial step because, as explained above, the TAC does not allege the existence of a fiduciary relationship between plaintiff and the Carcione defendants. In the absence of such allegations, a cause of action for an accounting may not lie.

\*       \*       \*

For the reasons stated above, the Carcione defendants' motion is granted in its entirety. Because TMS II's claims against the Carcione defendants fail due to the existence of the Purchase Agreement, and not due to any pleading deficiencies,

further amendments to the complaint would be futile. *See Ellis v. Chao*, 336 F.3d

114, 127 (2d Cir. 2003). Accordingly, TMS II's request for leave to replead is denied.

    B.   <u>Prero & Pegasus</u>

As against the Prero defendants, the TAC alleges fraud (Count Six), aiding

and abetting breach of fiduciary duties (Count Seven), and unjust enrichment

(Count Eight). The Prero defendants have moved to dismiss the fraud and aiding

and abetting claims for failure to state a claim under Federal Rule of Civil

Procedure 12(b)(6).[10] For the reasons stated below, the motion is granted.

    1.   <u>Fraud</u>

To state a claim for fraud under New York law, a party must allege material

misrepresentation of a fact, knowledge of its falsity, an intent to induce reliance,

justifiable reliance by the plaintiff, and damages. *See Eurycleia Partners, LP*, 910

N.E.2d at 979. A complaint predicated upon fraud must "(1) specify the statements

that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where

and when the statements were made, and (4) explain why the statements were

fraudulent." *Rombach*, 355 F.3d at 170 (quotation marks omitted). Failure to do so

requires dismissal of the complaint. *Id.*

Plaintiff alleges that, in or about July 2010, Prero, on behalf of himself and

Pegasus, knowingly made several false representations to TMS II, including that

"the price of $7.95 million for the 772 Plane was the best price possible," (TAC ¶

120); plaintiff "should trust [the Carcione defendants] because the price offered on

---

[10] The Court will discuss next steps regarding TMS II's claim of unjust enrichment against the Prero
defendants at an appropriate time.

the 772 Plane was the lowest price possible," (*id.* ¶ 121); "if Plaintiff did not purchase the 772 Plane for $7.95 million, Plaintiff would end up paying more for a lower quality aircraft," (*id.* ¶ 122); and plaintiff should allow the Carcione defendants to handle the sales transaction on TMS II's behalf "since [they] would ensure that Plaintiff received the best price and terms possible on the 772 Plane," (*id.* ¶ 123). TMS alleges that Prero, on behalf of himself and Pegasus, made these misrepresentations because he knew he and his company would use the 772 Plane in their charter airplane business, and because they would share in the allegedly undisclosed profits made from the sales transaction. (*Id.* ¶¶ 119, 125.)

TMS II, however, cannot state a claim for fraud because it has failed to allege plausible facts supporting justifiable reliance on any of these alleged misrepresentations. In New York, it is well settled that a plaintiff cannot establish justifiable reliance when, "by the exercise of ordinary intelligence it could have learned of the information it asserts was withheld." *PPI Enters. (U.S.), Inc.*, 2003 WL 22118977, at *20 (citation and internal quotation marks omitted); *see also Crigger v. Fahnestock and Co.*, 443 F.3d 230, 234 (2d Cir. 2006) ("A plaintiff . . . cannot demonstrate reasonable reliance without making inquiry and investigation if he has the ability, through ordinary intelligence, to ferret out the reliability or truth about an investment."). "'Only when matters are held to be peculiarly within defendant's knowledge is it said that plaintiff may rely without prosecuting an investigation,' because the plaintiff would have 'no independent means of

ascertaining the truth.'" *Ward v. TheLadders.com, Inc.*, 3 F. Supp. 3d 151, 166 (S.D.N.Y. 2014) (quoting *Crigger*, 443 F.3d at 234).

Here, each of the alleged misrepresentations by the Prero defendants relates to the price of the 772 Plane, and there is no suggestion in the TAC that TMS II could not have conducted its own investigation to determine the market value of an aircraft like the 772 Plane. More importantly, the 772 Plane's worth was not "peculiarly within" the Prero defendants' knowledge. As an initial matter, it is undisputed that the Prero defendants were not the sellers of the 722 Plane. Furthermore, there is no allegation in the TAC that they were in the business of valuing aircrafts; the TAC alleges only that the Prero defendants operate an aircraft charter business. (TAC ¶¶ 7, 20-22, 66.) Instead, the Carcione defendants are the ones who allegedly "provide brokerage services for purchasing and maintaining private aircrafts," (*id.* ¶ 11; *see also id.* ¶ 23), and, according to the TAC, the Prero defendants referred TMS II to the Carcione defendants specifically for that purpose, (*id.* ¶¶ 23, 68). Finally, although the TAC alleges that the Prero defendants performed "pre-purchase diligence" on the 772 Plane, (*id.* ¶ 49), there is no allegation that the due diligence was in any way related to the 772 Plane's valuation. Instead, it appears to have been related only to the 772 Plane's condition. (*Id.* ¶ 69 ("Prero and Pegasus also arranged for due diligence to be performed on Plaintiff's behalf and reported to Plaintiff that the 772 Plane was in excellent condition.").) The Court finds TMS II's arguments to the contrary, and its attempts to distinguish the cases cited above, unconvincing. (*See* Resp. Opp'n at 11-12.)

Because TMS II has not alleged justifiable reliance on any alleged misrepresentations, the Court finds it unnecessary to address the Prero defendants' other arguments about why TMS II fails to make out a claim of fraud. Further, the Court finds that amending the TAC would be futile because it will continue to be the case that TMS II could have conducted its own investigation into the valuation of an aircraft similar to the 772 Plane, and that the Prero defendants are not valuation experts. Accordingly, TMS II's fraud claim against the Prero defendants is dismissed with prejudice.

### 2.   Aiding & Abetting Breach of Fiduciary Duties

In order to state a cause of action for aiding and abetting a breach of fiduciary duty under New York law, a plaintiff must adequately plead "the existence of a primary violation, actual knowledge of the violation on the part of the aider and abettor, and substantial assistance." *Kirschner v. Bennett*, 648 F. Supp. 2d 525, 533 (S.D.N.Y. 2009).

TMS II alleges that the Prero defendants substantially assisted the Carcione defendants in breaching their fiduciary duty to plaintiff by lying to plaintiff about the true price of the 772 Plane, assisting with the pre-purchase due diligence, and failing to disclose the Carcione defendants' true motives. (TAC ¶ 139.) For the reasons set forth above, TMS II has failed to state a claim that the Carcione defendants owed a fiduciary duty to plaintiff. Accordingly, the Prero defendants could not have aided and abetted the Carcione defendants in breaching a non-existent duty. TMS II's aiding and abetting claim is dismissed with prejudice.

23

IV.   CONCLUSION

For the reasons set forth above, the Carcione defendants' motion for judgment on the pleadings is GRANTED, and the Prero defendants' motion to dismiss is GRANTED.

The Clerk of Court is directed to terminate the motions at ECF Nos. 122 and 126.

SO ORDERED.

Dated:       New York, New York
             December 5, 2016

_____
            KATHERINE B. FORREST
            United States District Judge

24